1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

LISA A. CORNISH,

11                                   Plaintiff,

12            v.

13   MICHAEL J. ASTRUE, Commissioner of
     Social Security,

14

15                                   Defendant.

16

CASE NO.      C07-5364FDB-KLS

REPORT AND
RECOMMENDATION

Noted for June 20, 2008

17            Plaintiff, Lisa A. Cornish, has brought this matter for judicial review of the denial of her

18   application for disability insurance benefits.  This matter has been referred to the undersigned Magistrate

19   Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews,

20   Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining

21   record, the undersigned submits the following Report and Recommendation for the Honorable Franklin D.

22   Burgess's review.

23                           FACTUAL AND PROCEDURAL HISTORY

24            Plaintiff currently is 43 years old.[1] Tr. 29.  She has an eleventh grade education and past work

25   experience as a hairstylist, cosmetic salesperson and payroll clerk. Tr. 350.

26            On July 12, 2002, plaintiff filed an application for disability insurance benefits, alleging disability

27

28            [1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to
     Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

as of August 16, 2001, due to problems with her neck and back, migraine headaches, panic attacks, and carpal tunnel syndrome. Id.  Her application was denied initially and on reconsideration. Id.  A hearing was held before an administrative law judge ("ALJ") on June 2, 2004, but then was postponed to a later date prior to any testimony being taken to obtain a psychological consultation and updated medical records. Id.  Another hearing was held before the same ALJ on November 22, 2004, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. Id.

On April 28, 2005, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of depression, panic disorder, chronic pain syndrome, and degenerative joint disease;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and

(4) at step four, plaintiff had the residual functional capacity to perform light work with certain additional exertional and non-exertional limitations, which did not preclude her from returning to her past relevant work as a salesperson.

Id.  Plaintiff's request for review was denied by the Appeals Council on August 19, 2005. Id.

On October 19, 2005, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. Id.  The administrative record was filed with the Court on October 23, 2007. (Dkt. #8).  Specifically, plaintiff argued that decision should be reversed and remanded for further administrative proceedings, for the following reasons:

(a) the ALJ erred in not finding plaintiff's carpal tunnel syndrome to be a "severe" impairment; and

(b) the ALJ erred in finding plaintiff capable of returning to her past relevant work as a salesperson.

Id.  On April 13, 2006, the undersigned issued a report and recommendation, finding that the ALJ properly did not determine plaintiff's carpal tunnel syndrome to be severe and that the ALJ did not err in assessing plaintiff's residual functional capacity. Tr. 351-54.  However, because the undersigned found that the ALJ

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

erred in failing to properly evaluate whether plaintiff's past relevant work was substantial gainful activity, the recommendation was made to remand this matter to the Commissioner for further consideration of this issue, which the Court adopted on May 25, 2006. Tr. 348, 354-57.

On remand, further evidence was obtained, and another hearing was held before the same ALJ on November 16, 2006, at which plaintiff, represented by counsel, appeared and testified, as did two lay witnesses, a medical expert and a vocational expert. Tr. 503-56.  On February 14, 2007, the ALJ issued a decision, again determining plaintiff to be not disabled, finding specifically in relevant part:

(1)     at step one of the sequential disability evaluation process, since her alleged onset date of disability through March 31, 2003, her date last insured, plaintiff had not engaged in substantial gainful activity;

(2)     at step two, through her date last insured, plaintiff had "severe" impairments consisting of a chronic pain syndrome and degenerative joint disease of the cervical and thoracic spines;

(3)     at step three, through her date last insured, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and

(4)     at step four, through her date last insured, plaintiff had the residual functional capacity to perform a limited range of light work, which did not preclude her from performing her past relevant work.

Tr. 325-44.  On May 23, 2007, the Appeals Council declined to assume jurisdiction of the case. Tr. 317; 20 C.F.R. § 404.984.  The ALJ's decision thus became the Commissioner's final decision after sixty days. 20 C.F.R. § 404.984.

On July 23, 2007, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1).  Specifically, plaintiff argues that decision should be reversed for the following reasons:

(a)     the ALJ erred in not finding plaintiff's post traumatic stress disorder ("PTSD") to be severe;

(b)     the ALJ erred in assessing plaintiff's credibility; and

(c)     the ALJ erred in evaluating the lay witness evidence in the record.

For the reasons set forth below, the undersigned does not agree that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that the ALJ's decision be affirmed.

<u>DISCUSSION</u>

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole

to support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.    Plaintiff's Date Last Insured

To be entitled to disability insurance benefits, plaintiff "must establish that her disability existed on or before" the date his insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status).  As noted above, plaintiff's date last insured was March 31, 2003.  Therefore, to be entitled to disability insurance benefits, plaintiff must establish she was disabled prior to or as of that date. Tidwell, 161 F.3d at 601.

II.   The ALJ's Step Two Analysis

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." Id.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work."  See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device

1   used to dispose of groundless claims.  Smolen, 80 F.3d at 1290.

2         As noted above, in appealing the ALJ's first decision to this Court, plaintiff argued the ALJ erred

3   in not finding his carpal tunnel syndrome to be a severe impairment, an argument which was rejected by

4   the undersigned.  This time, plaintiff argues the ALJ erred in not finding her PTSD was a severe

5   impairment.  While plaintiff did not raise this issue in requesting reversal of the ALJ's first decision –

6   which generally would prevent judicial review thereof given the undersigned's prior determination that the

7   ALJ did not err in his step two analysis contained therein – other factors, as discussed in further detail

8   below, make it more appropriate to do so here.

9         In his most recent decision, and the one being challenged here, the ALJ found the evidence in the

10  record did "not reflect" that plaintiff's depression was a severe impairment. Tr. 335.  This finding is in

11  direct contradiction to the ALJ's step two finding contained in his first decision that plaintiff suffered

12  "from severe mental impairments, depression and a panic disorder." Tr. 21.  The record also contains

13  additional medical evidence regarding plaintiff's mental impairments dated subsequent to the ALJ's first

14  decision, thus making it appropriate for the undersigned to address plaintiff's new step two challenge here.

15  That being said, the undersigned finds for the reasons set forth below that the ALJ did not err in failing to

16  find plaintiff's PTSD to be severe prior to her date last insured.

17        In support of her argument, plaintiff relies primarily on the ALJ's failure to mention in his decision

18  the diagnosis of PTSD made by John Robinson, Ph.D., and Thomas Clifford, Ph.D., two non-examining

19  physicians in late October 2002 (Tr. 163), and their criticism of Jay Jawad, M.D., an examining physician,

20  who found plaintiff had no psychiatric symptoms or limitations, or even any psychiatric diagnoses, in late

21  September 2002 (Tr. 157).  Specifically, Dr. Jawad opined in relevant part:

22         . . . On our evaluation today, I was unable to elicit any psychiatric syndromes or
           symptoms whatsoever.  Most of her limitations are largely because of pain and not
23         from any form of psychiatric disability or psychiatric illness of any kind.

24         I actually find the claimant to have quite good coping skills, given her circumstances,
           and I would anticipate absolutely no psychiatric reason to inhibit her from working.  I
25         cannot comment on her medical or organic conditions, as they were not assessed today.
           . . .
26
           . . . This individual is capable of managing her own funds without any difficulties.
27
           From a psychiatric standpoint, I find this claimant to have no limitations in performing
28         simple and repetitive tasks, getting instructions from supervisors, or interacting with
           coworkers or the public.  I would not anticipate her needing any additional supervision.

1

2          Again, there is not currently any indication for psychiatric limitation. . . .

3     Id.

4          In contrast, on a psychiatric review technique form Drs. Robinson and Clifford diagnosed plaintiff

5     with PTSD, with elements of occasional panic and mild agoraphobia, and a pain disorder with medical and

6     "psych" factors. Tr. 163-64.  They found her to be moderately limited in several mental functional areas.

7     See Tr. 168, 172-74.  On that form, Dr. Robinson and Dr. Clifford, as noted above, criticized the findings

8     made by Dr. Jawad, stating in relevant part as follows:

9              Given that the 9/28/02 Psych CE [Dr. Jawad] is almost 3 years post assault, the CE Dr.
               completely fails to appreciate the meaning or functional significance of the symptom
10             pattern, or to arrive at an accurate diagnostic formulation, which should have been: 1)
               PTSD, with elements of panic and mild agoraphobia[,] 2) Pain disorder with psych and
11             medical factors, 3) Dyssomnia associated with both of the above.

12    Tr. 170.  While, as plaintiff asserts, Drs. Robinson and Clifford opined that she "probably could not return

13    to her immediately prior job," they also noted the fairly high level of functioning she demonstrated in the

14    mental status examination conducted by Dr. Jawad and as evidenced by plaintiff's report of her own ability

15    to function and perform daily activities she made to him. Id.  In addition, in the mental residual functional

16    capacity assessment form they completed at the same time, Dr. Robinson and Dr. Clifford further opined

17    as follows regarding plaintiff's ability to function:

18             Claimant's mild cognitive symptoms are from Percocet or from anxiety interference
               and are not as severe as she claims – per [Dr. Jawad's] objective MSE – leaving her
19             able to perform as well cognitively as she used to, so long as the intrusion from PTSD-
               related anxiety is minimized.  She would need "safe" work away from PTSD triggers,
20             able to "escape" as needed, with only modest social demands.  However she can
               demonstrably meet the minimal social demands of leaving the house, well groomed and
21             dressed, drive to and from work, behave normally and get along while there, so long as
               her anxiety disorder is accommodated to some degree.
22
      Tr. 174.
23
               The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the
24
      medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in
25
      the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions
26
      of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion
27
      must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th
28
      Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact

inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff argues the comments made by Dr. Robinson and Dr. Clifford deserved comment from the ALJ, and the ALJ's failure to so comment constituted error. It is true that the findings and opinions of Drs. Robinson and Clifford amount to "significant probative evidence," which required an explanation from the ALJ before he could reject it. It also is true that Dr. Robinson and Dr. Clifford, as noted above, diagnosed

1   plaintiff with PTSD, and found her to suffer from at least some work-related limitations due at least in part

2   to that diagnosis – though perhaps not as significant as believed by plaintiff.

3          The undersigned, however, finds that to the extent the ALJ erred in evaluating the medical

4   evidence from Dr. Robinson and Dr. Clifford, such error was harmless. See Batson v. Commissioner of the

5   Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004) (applying harmless error standard);

6   Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (holding ALJ committed harmless error).  Although

7   an error will be found harmless only if it is "inconsequential" to the ALJ's "ultimate nondisability

8   determination," that is the case here. Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055

9   (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability

10  conclusion).  In other words, the undersigned finds that a more in-depth discussion by the ALJ of the

11  findings and opinions made by Drs. Robinson and Clifford would not have changed the outcome of this

12  case.

13         First, while he did not do so in the section of his decision dealing specifically with his analysis at

14  step two, the ALJ did make mention of that evidence in regard to the existence, or rather lack thereof, of

15  plaintiff's mental functional limitations prior to her date last insured:

16         I further considered the reports of the non-examining sources of record, including the
       State agency's medical consultants.  They also found the claimant should perform no

17     more than light work and also found postural and environmental limitations, as well as
       some non-exertional limitations (Exhibits 6F [the psychiatric review technique form

18     completed by Drs. Robinson Clifford], 7F [the mental residual functional capacity
       assessment form completed by the same], and 9F).  I also find these conclusions to be

19     credible and have adopted their physical residual functional capacity assessment, as
       well as the mental residual functional capacity assessment.  Although they did not have

20     the benefit of more recent reports received by me into the record, I find their
       conclusions are credible.  I find the newly received evidence and testimony from the

21     medical expert support a finding the evidence fails to establish claimant had any mental
       limitations prior to the date last insured.  Specifically, Dr. [Robert John] McDevitt

22     testified there is no evidence to support symptoms or limitations dating back to March
       2003, but he agreed with Dr. [John] Kooiker's assessment for the time she was

23     evaluated (i.e., January 2006).  However, the claimant must establish disability on or
       before March 31, 2003, in order to be entitled to a period of disability and disability

24     insurance benefits.

25  Tr. 342-43 (emphasis added).  Thus, contrary to plaintiff's assertion, while the ALJ may not have

26  discussed the findings and opinions of Dr. Robinson and Dr. Clifford in great detail, he did address that

27  evidence.  As such, the ALJ cannot be faulted on that basis.

28         Although the ALJ's discussion of this medical evidence at first glance appears to be ambiguous or

contradictory – in that he initially stated he found the conclusions contained therein to be credible and was adopting the mental residual functional capacity assessment – further review of the ALJ's findings and the weight of the medical evidence in the record make it less so.  At the outset, as noted above, the comments regarding plaintiff's work-related mental functional capabilities indicate Drs. Robinson and Clifford found her to be functioning mentally at a fairly high level overall. <u>See</u> Tr. 170, 174.  Thus, the ALJ would not necessarily have been completely remiss in viewing their findings as being more indicative of a lack of significant mental limitations, although, also as noted above, those findings do indicate the presence of at least some more than minimal such limitations.

Regardless, the ALJ did also correctly note that other objective medical evidence in the record – particularly that which was more recently received, and which neither Dr. Robinson nor Dr. Clifford had the benefit of reviewing – failed to reveal the existence of such limitations prior to plaintiff's date last insured.  As already noted, for example, Dr. Jawad found plaintiff suffered from no psychiatric symptoms or limitations, let alone psychiatric diagnoses.  While, as plaintiff points out, Drs. Robinson and Clifford did strongly disagree with this lack of diagnoses, and did find PTSD to be present, an examining medical source's opinion is entitled to greater weight than that of a nonexamining medical source, which the ALJ apparently gave to that of Dr. Jawad here.

The weight of the medical opinion source evidence in the record, furthermore, supports the ALJ's determination that the record fails to establish the presence of any work-related mental health limitations, let alone any stemming from PTSD, prior to her date last insured.  In addition to the report of Dr. Jawad, Lane van der Sluis, Psy.D., another examining medical source, evaluated plaintiff in late August 2004, but made no diagnosis of PTSD. Tr. 255.  Nor did Dr. Sluis make any findings concerning the presence of any mental functional limitations existing prior to plaintiff's date last insured, although her current limitations may have had their origin in events that occurred prior to her date last insured. Tr. 252-59.  In addition, to the extent that such findings could be inferred, plaintiff has not challenged the ALJ's determination to give no weight to Dr. Sluis's report. <u>See</u> Tr. 342.

At the second hearing held on November 22, 2004, the medical expert, Dr. Nancy Tarrand, testified that she too did not "see any evidence in" Dr. Sluis's "evaluation of a diagnosis of post-traumatic stress disorder." Tr. 307.  While she did find plaintiff to have more than minimal work-related mental functional

1  limitations, once more, none of them were related to a diagnosis of PTSD, nor did Dr. Tarrand testify that

2  plaintiff had those limitations at any time prior to or through her date last insured. <u>See</u> Tr. 307-09.  While

3  Dr. John Kooiker, a psychiatrist who evaluated plaintiff in early January 2006, also made no findings as to

4  the presence of PTSD, though he did note other mental disorders. Tr. 484.

5         In mid-May 2006, Sunshine E. Clark, Ph.D., who had been treating plaintiff since late February

6  2006, wrote a letter in which she found plaintiff to be "suffering from severe symptoms of" PTSD, along

7  with other mental impairments. Tr. 421.  Although Dr. Clark reported that plaintiff had made "excellent

8  progress," she still found her to be limited, further opining that she had "much progress to make before

9  she" reached "her optimum functioning," and that she would "likely never reach her premorbid level of

10  functioning." Tr. 422.

11        The ALJ addressed Dr. Clark's findings as follows:

12      . . . I have considered the assessment from Dr. Clark regarding the severity of the
         claimant's symptoms, but note that Dr. Clark was writing the letter in [sic] attempt to

13      get authorization for additional psychological treatment for the claimant.  Although
         such evidence is certainly legitimate and deserves due consideration, the context in

14      which it was produced cannot be entirely ignored.  In addition, Dr. Clark's assessment
         was for treatment she rendered in 2006, but there is no evidence to establish claimant's

15      symptoms were present at that degree prior to the date last insured of March 31, 2003.

16  Tr. 337.  Plaintiff takes issue with the ALJ's evaluation of Dr. Clark's opinions.  The undersigned agrees

17  the first reason given by the ALJ – that having to do with why the letter itself was being obtained – was

18  not a proper basis upon which to reject Dr. Clark's findings. <u>See</u> <u>Lester v. Chater</u>, 81 F.3d 821, 832 (9th

19  Cir. 1996) (purpose for which medical report is obtained is not legitimate basis for rejecting that report,

20  absent evidence of actual improprieties).

21        In addition, it is true that some evidence of PTSD prior to plaintiff's last date insured was provided

22  by Dr. Robinson and Dr. Clifford.  As discussed herein, however, the weight of the medical evidence in

23  the record supports the ALJ's determination concerning the severity of plaintiff's mental symptoms prior

24  to and through that date.  Plaintiff argues the findings of Drs. Robinson and Clifford are consistent with

25  those of Dr. Clark, but, also as discussed above, the ALJ is more correct in noting that the degree of

26  limitations found by Dr. Clark were not present before plaintiff's insured status expired.  Nor, given the

27  lack of any intervening PTSD diagnosis, or of evidence of any limitations stemming therefrom, does the

28  record show that plaintiff's PTSD "persisted into 2006" as claimed by plaintiff. (Dkt. #14, p. 14).

Other medical evidence in the record further supports the ALJ's determination here.  For example, as noted by the ALJ, also in May 2006, plaintiff's treating physician, Wen Sun Lum, M.D., found that her depression and anxiety were both well-controlled with medication. Tr. 337, 498.  In addition, the second medical expert, Dr. Robert John McDevitt, testified at plaintiff's most recent hearing in mid-November 2006, that while he agreed with the current diagnosis of PTSD, there was really no evidence thereof, or of any mental health issues for that matter, prior to 2006. Tr. 521-23.  Indeed, he further testified in response to express questioning from plaintiff's attorney on this issue that there really was not any evidence in the record to support "[g]oing back as far as March 2003." Tr. 526.

Lastly, plaintiff argues that "when the diagnostic criteria for somatic pain complaints diagnosed by Drs. [Joseph R.] McFarland and [Meed A.] West in May, 2003 are considered they lend additional credence to the possibility of an anxiety related disorder such as PTSD being present in the two months prior to their examinations." (Dkt. #14, p. 15).  Neither Dr. McFarland nor Dr. West, however, specifically evaluated plaintiff for mental impairments.  In addition, the mere fact that the diagnosis of a somatic pain complaint may lend some additional credence to the "possibility" of a disorder such as PTSD – though the undersigned makes no such finding here – is not enough.  Rather, plaintiff must make a sufficient showing that such a condition actually existed during the relevant time period, and that it resulted in actual work-related limitations.  She has failed to make that necessary showing here.

III.    The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination.  Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.;

1   Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is

2   malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."

3   Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering.  O'Donnell v.

4   Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

5          In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

6   evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

7   testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ

8   also may consider a claimant's work record and observations of physicians and other third parties

9   regarding the nature, onset, duration, and frequency of symptoms. Id.

10          Here, the ALJ discounted plaintiff's credibility for the following reasons:

11     At the hearing, the claimant presented herself at the hearing as histrionic, exaggerating
       nearly all of her complaints.  I believe Mrs. Cornish is more capable of performing
12     daily activities than she admits.  She also alleges she is depressed, but she has not
       sought any treatment for this nor had she taken any medications until 2006.  When
13     claimant was last examined by Dr. [Tresha] Dronen in May 2004, the doctor noted she
       had not seen the claimant since December 2002.  She used to see her chiropractor, Dr.
14     [C. J.] Bartness, however, she had not seen him since March 2003.  Dr. Dronen further
       noted claimant had been through a multitude of medications (although she takes none
15     of them now) and had been through many management regimens also.  She also was
       seen by Dr. Dronen, a specialist in ligament dysfunction.  On claimant's last visit, the
16     doctor suggested she try to get into a special program in town that would help her, but
       the claimant never did.  Dr. Dronen further noted the claimant is a smoker.  Dr.
17     Bartness, claimant's chiropractor, stated there are perhaps certain sedentary jobs she
       might be able to handle.  He also indicated there had been a large gap in treatment that
18     should have been done several months before, and that she had reached a plateau in her
       treatment, to the point where she did get some relief, but the problem was still there
19     (Exhibit 11F/1).

20     The claimant did not seek regular treatment for the pain she alleges was so severe that
       she was unable to do most things during the time period under consideration in this
21     decision.  Although she had been to many physicians, she did not see them regularly
       enough so they could find a way to help her.  Also, prior to 2006, she declined
22     prescribed medications that might help limit the amount of pain she deals with.
       Further, she alleges she was depressed and anxious, but prior to 2006 she did not seek
23     help for this problem either.  If she does not seek help, or engage in activities that may
       help her to get better, she never will improve.  The recent medical records do reveal she
24     sought medical and psychiatric treatment in 2006, and she has experienced good
       improvement in her psychiatric symptoms with medication management and counseling
25     (Exhibit 20F and 25F).  The claimant also testified her chronic pain is better with
       medications.

26
       A review of the claimant's work history shows claimant worked only sporadically prior
27     to the alleged disability onset date, which raises a question as to whether the claimant's
       continuing unemployment is actually due to medical impairments.  In addition, the
28     description of the symptoms and limitations claimant has provided throughout the
       record has generally been unpersuasive.

1 Tr. 340.

2       Plaintiff takes issue with these stated reasons for discounting her credibility, arguing that they do

3 not form a valid basis for finding her not credible regarding her degree of limitation in functioning.  With

4 the exception of plaintiff's presentation at the hearing, prior work history and description of her symptoms

5 and limitations, however, the reasons put forth by the ALJ for discounting her credibility are substantially

6 the same here as those the ALJ gave in his prior decision. See Tr. 24-25.  Further, as expressly noted in the

7 undersigned's previous report and recommendation, plaintiff did not challenge the ALJ's determination to

8 discount her credibility in his prior decision. Tr. 352.

9       Indeed, as noted above, this matter was remanded to the Commissioner solely for the purpose of

10 reconsidering the issue of whether plaintiff's past relevant work constituted substantial gainful activity.

11 Thus, while plaintiff argues the ALJ's most recent reasons for discounting her credibility are not valid, the

12 failure to mount an earlier challenge to the ALJ's first credibility determination precludes her ability to do

13 so here.  That is, while there may be some question as to the legitimacy of some or all of those reasons, the

14 undersigned will not re-visit the issue of the ALJ's credibility determination, as plaintiff failed to challenge

15 the sufficiency thereof in her first appeal of the ALJ's decision.  The undersigned, in other words, will not,

16 and the Court should not, allow the re-opening of this already decided issue.

17 IV.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

18       Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into

19 account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to

20 each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001).  An ALJ may discount lay

21 testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.

22 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence).  In

23 rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons"

24 for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to

25 those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512.  The ALJ

26 also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

27       The record contains lay witness statements from plaintiff's husband and friend. See Tr. 92-96, 107-

28 11. The ALJ addressed those statements as follows:

I have taken into consideration the written statements submitted by . . . her husband and friend (Exhibits . . . 5E, 7E . . . ). I have also considered the testimony from the claimant's husband at the most recent hearing. However, the claimant's husband and friend have provided very non-specific information. I find them to be generally credible to the extent they report their observations of the claimant's behavior (although it is noted the friend appears to exaggerate her observations of claimant). However, as they do not have medical expertise, their opinions are of limited value regarding how the claimant's impairments impact her overall abilities to perform basic work activities at various exertional levels. Rather, there is more reliable evidence of record from medical professionals who are trained to evaluate impairments and their impact on functional capacity.

Tr. 341. Plaintiff argues none of these reasons for rejecting the lay witness statements are valid. Again, as with the ALJ's credibility determination, while the reasons the ALJ has provided may be suspect, they are substantially the same as those the ALJ gave in his prior decision. See Tr. 25. In addition, because plaintiff did not challenge the ALJ's previous rejection of the same lay witness statements in the record, he cannot ignore the finality of the undersigned's – and, by adoption, the Court's – findings contained in the first report and recommendation by now attempting to mount such a challenge here. To allow otherwise could result in endless rounds of administrative and judicial review, and also essentially render meaningless the Court's determinations regarding the issues it is asked to decide.

V.      The ALJ's Decision Should Be Affirmed

As discussed above, the determination of the undersigned and of this Court was to remand this matter to the Commissioner solely for re-consideration of the issue of whether plaintiff's past relevant work constituted substantial gainful activity at step four of the sequential disability evaluation process. Also as discussed above, none of the arguments plaintiff has made here for reversing the decision the ALJ issued on remand have withstood scrutiny or appropriately have been presented for review. In the ALJ's decision on remand, furthermore, the ALJ made a specific finding that plaintiff could perform her past relevant work, and that such work, although a different job this time, did constitute substantial gainful activity. Tr. 343. Plaintiff has not challenged this finding. Accordingly, the undersigned finds no issues remain regarding plaintiff's ability to perform her past relevant work, and thus the ALJ's determination that she could perform such work and that she is not disabled should be affirmed.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ properly concluded plaintiff was not disabled, and should affirm the ALJ's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **June 20, 2008**, as noted in the caption.

DATED this 27th day of May, 2008.


Karen L. Strombom
United States Magistrate Judge